UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THREE CELLULAR MOBILE DEVICES | Case No. 21-SW-202-PAS <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Jaclyn M. Campbell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications for search warrants for three mobile devices seized incident to the arrest of Joaquin FABIAN (born 1997) occurring on April 14, 2021 at 56/58 Fisk Street Providence, RI.

2. I have been a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since February 2020, and I am presently assigned to the Providence Field Office of the Boston Field Division. My responsibilities are to investigate and prevent offenses involving the unlawful use, manufacture, and possession of firearms and explosives, as well as to investigate violations of federal arson statutes. I attended and successfully completed the Department of Homeland Security, Criminal Investigator Training Program and ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Brunswick, Georgia.

3. Previous to employment as a Special Agent with the ATF, I was employed as an Intelligence Research Specialist with the ATF and assigned to the Boston Field Division for two and half years. Previously I was employed with ATF as an Investigative Analyst for the Boston Field Division for one year assigned to the Boston Crime Gun Intelligence Center. During my time employed as an analyst, I specialized in the exploitation and analysis of mobile device

information and technology. Prior to then, I served on active duty in the United States Army as a Military Intelligence Officer assigned to the 82nd Airborne Division for approximately four years. I earned a Bachelor of Science degree in political science from the University of Rhode Island. As a result of training and experience as an ATF Special Agent (SA), I am familiar with Federal criminal laws relating to firearms violations.

4. While employed as an Intelligence Research Specialist, I have investigated violations of local, state and federal criminal statutes; conducted mobile device exploitation and analysis; analyzed call detail records, cell site records, cell phone tower data, and timing advance data; conducted social media exploitation of various platforms and interviewed defendants, witnesses and informants. I have experience and training in firearms and narcotics trafficking cases, gang investigations, arson investigations and the utilization of informants and cooperating witnesses to investigate firearms and narcotics trafficking and other organized criminal activity. I am familiar with the "street" language used by firearm and/or drug traffickers via electronic communication facilities, as well as the methods they use to disguise conversation and operations.

5. I have received training in analysis of call detail and other records from electronic communication facilities commonly used by individuals engaged in criminal activity to communicate about their illegal enterprises. I have used information obtained from communication facilities, including service provider records and GPS location information, to investigate criminal conspiracies involving firearms and narcotics offenses. In addition, I have specifically utilized the type of records that I seek in this application.

6. I have received training in analysis of call detail and other records from electronic communication facilities commonly used by individuals engaged in criminal activity to

communicate about their illegal enterprises. I have used information obtained from communication facilities, including service provider records and GPS location information, to investigate criminal conspiracies involving firearms and narcotics offenses. In addition, I have specifically utilized the type of evidence that I seek in this application

7. This affidavit is submitted in support of applications for warrants to search the following three cellular phones:

1. a blue OnePlus mobile device with IMEI 990017112075912 (hereinafter "Subject Phone 1")
2. a red Apple iPhone with cracked case and screen in red case (hereinafter "Subject Phone 2")
3. a grey Apple iPhone in clear case (hereinafter "Subject Phone 3"):

collectively, the "Subject Phones". Detailed descriptions and photographs of the Subject Phones are included in Attachments A-C, respectively.

8. Based on the facts presented in this affidavit, there is probable cause to believe that Joaquin FABIAN (born 1997) has violated 18 USC 922(g) (possession of a firearm by a convicted felon).

9. As detailed below, there is probable cause to believe that the Subject Phones contain evidence of crimes; contraband, fruits of crime, and other items illegally possessed; and constitute property designed for use, intended use, or used in committing crimes, namely the Subject Offenses. A more specific list of items to be seized may be found in Attachment D.

10. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## CASE BACKGROUND

11.     In December 2020, the Providence Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted the proffer of a federal defendant (hereinafter "Suspect 1") whom was tied to an ongoing interstate firearms trafficking investigation. The investigation involved Suspect 1, whom was trading firearms that he had purchased in Massachusetts and then knowingly obliterated the serial numbers of those firearms prior to trading them for quantities of fentanyl in both Massachusetts and Rhode Island. Suspect 1 engaged in the proffer in hopes of providing cooperation to the Government to secure consideration on his pending felony firearms charge. During the proffer session, Suspect 1 stated that in approximately the summer of 2020, he had traded a Smith & Wesson, M&P 40C, .40 caliber pistol for approximately one ounce of fentanyl from a drug dealer who he knew as "G" or "Greg" (hereinafter "FABIAN"). Suspect 1 stated that he had removed the serial number from the handgun prior to making the trade with FABIAN and had coordinated the transaction through cell phone text messages and phone calls. The federal defendant described FABIAN as a younger Dominican light skinned black male with dark hair, thin beard and slim build. Suspect 1 further described FABIAN as approximately 5'10" with tattoos on his arms.

12.     FABIAN had been previously identified during the course of the aforementioned firearms trafficking investigation after being observed making a narcotics delivery to Suspect 1 on November 18, 2020 in Massachusetts as referenced in and earlier affidavit filed with this court in support of a search warrant (Docket No. 21-SW-005-PAS).

13. On December 20, 2020, during the aforementioned proffer of Suspect 1, Suspect 1 stated that FABIAN provided the number of 774-441-3226 (hereinafter "3226") as the means to contact him for fentanyl. Suspect 1 confirmed he reached FABIAN via the 3226 in approximately November 2020 in order to facilitate fentanyl transactions.

14. On February 17, 2021, Agents met with an individual who wishes to remain anonymous (CI#1)[1]. CS#1 stated that they had routinely purchased controlled substances, particularly fentanyl, from a drug dealer known them as "G" and had made a purchase within the past week. CS#1 stated that "G" often drove different vehicles, but most regularly operated a white Honda Ridgeline. CS#1 stated that "G" typically makes deliveries to their home, where they typically meet briefly in the vehicle parked in the driveway. CS#1 stated that they coordinate the drug transactions by means of cell phone communication.

15. On January 12, 2021, the United States District Court for the District of Rhode Island issued a Federal search warrant for the GPS location data of 3226 based on facts established in an affidavit submitted on January 12, 2021. The facts established in this affidavit may be referenced in <u>Exhibit 1</u> and expressly incorporated by reference herein (Docket No. 21-SW-005-PAS).

16. On February 27, 2021, through toll analysis of previously identified customer numbers it was determined that 3226 was deactivated on or around February 25, 2021 and a new mobile device phone number was activated and identified as the new "Target Number" of 774-477-9105 (hereinafter 9105).

---

[1] CS #1 was promised anonymity based on concerns about personal security. I will therefore refer to this informant only as CS #1. The information provided by CS #1 was corroborated by investigation or cross corroborated by information independently provided by other confidential sources. CS #1 does not have a criminal history but does admittedly have an addiction to controlled substances.

17. On April 2, 2021, the United States District Court for the District of Rhode Island issued a Federal search warrant for the GPS location data of 9105 based on facts established in an affidavit submitted on January 12, 2021. The facts established in this affidavit may be referenced in Exhibit 2 and expressly incorporated by reference herein (Docket No. 21-SW-131-LDA).

## PROBABLE CAUSE

18. On April 14, 2021, while utilizing location information received by T-Mobile per the aforementioned Federal search warrant, criminal investigators from the Providence Field Office determined FABIAN to be located at his residence of 56/58 Fisk Street. Throughout the course of the morning, investigators tracked FABIAN's location in the area of Providence, RI by means of mobile surveillance in conjunction with the location data for 9105.

19. During this time, I observed a social media posting made by FABIAN to a previously identified social media account belonging to him of a firearm positioned in between what appear to be FABIAN's legs while seated in a motor vehicle. I recognized the firearm to be consistent with the appearance of Glock model 43 semiautomatic pistol with a polymer frame. I also observed the firearm as having a distinct belt clip on the slide, which functions as holster and is unique as it typically sold as an aftermarket accessory added to the firearm. It should be noted that the sweatpants and black sneakers observed in the video appeared consistent with those FABIAN was observed wearing while departing Fisk Street earlier that day. The timestamp associated with the posting stated "1h ago", which indicated that the video was taken at approximately 1230 hours on that same date.

20. Based on my training and experience, I know it to be true that the social media application of Snapchat is a mobile proprietary application and is compatible with each of the Suspect Phones. I know it to be true that Snapchat functions as a means to share photos taken with a mobile device and I have observed that each of the Suspect Phones have cameras, screens and other attributes which would render the devices capable of capturing images, similar to that of the one posted to FABIAN's Snapchat account depicted a firearm.

21. I continued to monitor GPS location data associated with 9105, which displayed the location of 9105 as traveling to the area of Franklin, MA and returned to Rhode Island by way of route 146 South. This pattern of behavior is consistent with patterns previously identified within the course of the investigation as FABIAN's pattern of servicing his Massachusetts narcotics customers.

22. At approximately 1540 hours, the Acura FABIAN was known to be traveling in on this date based on mobile surveillance, was observed in the area of Dante Street in Providence, RI. Agents from the Providence Field Office maintained observation of the Acura from the area of Dante Street and throughout its travel to the area of Fisk Street.

23. At approximately 1555 hours, the Acura was observed entering Bernard Street and taking a right turn onto Fisk Street. Agents from the Providence Field Office observed the vehicle enter Fisk Street and take a left turn into the driveway of 56/58 Fisk Street traveling to the end of the driveway in the rear lot of the premises. Agents maneuvered their vehicles to the entry point of the driveway at which time they observed a Hispanic male consistent with the aforementioned description of FABIAN exit the operator door of the Acura and walk toward the direction of the rear exterior doorway of 56/58 Fisk Street.

24.     At this time, agents effected the arrest of FABIAN in the rear lot of the premises. During the course of the arrest, Agents called out to FABIAN by name, announcing their presence as police and giving orders for FABIAN to stop and show his hands. Agents observed FABIAN look towards their direction, stop his movement towards the house for a brief moment and then began to reach his hands towards his waistline in a manner consistent with the draw and indexing of a weapon. Agents again announced their presence as police and for FABIAN to show his hands and to stop where he was located. FABIAN then fled on foot towards the fence-line toward the rear of the parking lot behind 56/58 Fisk Street and out of sight for a brief moment. Agents advanced with caution down the driveway with duty weapons drawn in an effort to regain a visual of FABIAN while continuing to call out commands. Upon slowly rounding the corner, Agents observed FABIAN at the far corner of the parking lot near the fence. Agents provided commands to FABIAN to stop and show his hands. At this time, FABIAN become compliant and followed commands to lower himself to the ground, lying with his chest to ground and arms outspread. While moving to the ground, FABIAN placed three mobile devices on the ground next to him. Agents instructed FABIAN not to move while they approached him. The arresting agent returned his duty weapon to his holster and then placed FABIAN into custody without resistance or incident and immediately assisted FABIAN to his feet once the handcuffs were secure.

25.     During the search of FABIAN incident to arrest, RAC White recovered one clear plastic bag containing three individual clear plastic bags of a white powdery substance (2.7g) located in the front right pocket of FABIAN's pants. Once at the Providence Field Office, S/A Anthony Ventetuolo conducted a Fentanyl reagent field test on a relative sample of the

substance, which produced a presumption positive indication of Fentanyl. The remainder of the substance was packaged and logged into evidence at the Providence Field Office.

26. During a sweep of the area in an effort to locate the firearm observed to have been thrown by FABIAN, Task Force Officer (TFO) Matthew McGloin searched along the fence-line surrounding the back parking lot of 56/58 Fisk Street. TFO McGloin observed a firearm lying in plain view on the ground in the rear lot of 35 Bernard Street. The firearm was photographed in place and then taken into evidence in accordance with ATF evidence policy and procedure. The recovered firearm was identified as a Glock model 43, 9mm pistol bearing serial number BGKH533. It should be noted that the recovered firearm is consistent with features of the firearm pictured on FABIAN's social media account earlier that day, to include the frame, slide, coloring, marking locations and a slide mounted belt clip that functions as a holster. The firearm was loaded with six (6) rounds of 9mm CCI ammunition.

27. Based on my training and experience, I know it to be true that those involved in illegal narcotics and firearms trafficking are likely to use multiple mobile devices in an effort to evade detection by law enforcement. Based on the previously observed activity of the 3226 and 9105 during the course of this investigation, the phone appears to be utilized for customers only. Within these phones, no indications of FABIAN's suppliers were observed, which indicates to experienced investigators that it is likely FABIAN utilizes a separate mobile device to communicate with narcotics and/or firearms sources. I also know, based on training and experience, as well as the investigation to date, that mobile phones allow users to access social media, mapping and internet search applications, which may be used to gather information about firearms sellers and purchasers, as well as to locate meeting spots, target locations and the locations of firearms distribution points. I am further aware, that individuals previously

identified as either associates or customers of FABIAN, regularly utilized their devices to transmit text messaging including photographs of firearms being offered for trade for fentanyl.

28.  During the time of FABIAN's arrest, FABIAN stated to agents that there was one (1) pound of marijuana in back seat of his vehicle because he had just returned from Massachusetts where he purchased the marijuana. Based on the aforementioned GPS location information received from 9105 during the course of mobile surveillance that day, I know it to be true that FABIAN had returned from Franklin, MA approximately one (1) hour prior to the arrest. Upon search of the vehicle, large quantities of marijuana were located in the backseat of the vehicle, consistent with FABIAN's statements.

29.  The aforementioned Suspect Phones were located on the ground in the rear lot of 56/58 Fisk Street and were those that were observed as having been placed on the ground by FABIN during the course of his arrest.

30.  WHEREFORE, based on the facts detailed above, there is also probable cause to believe that the Suspect Phones, as described in more detail in Attachments A through D, respectively, hereto, have been used to facilitate the commission of the Subject Offenses and hold electronic evidence further supporting violations of federal law.

## ELECTRONIC STORAGE and FORENSIC ANALYSIS

31.  Based on my training and experience, I know that electronic devices such as the Subject Phones can store information for long periods of time, including information regarding internet usage. This information can sometimes be recovered with forensic tools.

32.  Based on my training and experience, I know that electronic devices such as the Subject Phones will routinely save a list of the most recent calls made and received, and will

retain evidence of the phone number that was call or rom which a call was received. That information could be used to connect FABIAN to the Subject Offenses.

33. Based on my training and experience, I know that text messages will remain on electronic devices such as the Subject Phones for long periods of time unless specifically deleted. In my training and experience, the content of text messages, which are routinely save with the number to whom messages are sent and from whom messages are received, could provide evidence of the involvement of FABIAN in the Subject Offenses as well as information regarding the identity of other conspirators.

34. Based on my training and experience, electronic devices such as the Subject Phones routinely contain information regarding individuals that are frequently contacted, such as contact lists. Within my training and experience, that information could lead to evidence of FABIAN's involvement in the Subject Offenses as well as information regarding the identity of other coconspirators.

35. As further described in Attachment D, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the Subject Offenses, but also as forensic evidence that establishes how the Subject Phones were used, the purpose of their use, who used them and when. There is probable cause to believe that this forensic evidence might be found on the Subject Phones because:

   1. Data on a storage medium can provide electronic evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file);

2. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

3. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them and when.

36. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passes along to investigators. Whether data stored on a smartphone is evidence may depend on other information stored on the smartphone and the application of knowledge about how a smartphone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the requested warrants.

37. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

## NATURE OF EXAMINATION

38. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants being sought would permit the examination of the Subject Phones for the items described in Attachment D. Such examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the

devices to human inspection in order to determine whether it is evidence described by the warrants.

## MANNER OF EXECUTION

39. Because this warrant seeks permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time of the day or night.

## CONCLUSION

40. I submit that this affidavit supports probable cause for search warrants authorizing the examination of Subject Phone 1, Subject Phone 2, and Subject Phone 3, described in Attachments A through C, respectively, to seek the items described in Attachment D.

Respectfully submitted,

_____
Jaclyn M. Campbell
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____.
(specify reliable electronic means)

_____          _____
Date                             Judge's signature

_____          _____
City and State                   Printed name and title

## ATTACHMENT A

### Property to Be Searched

1. One (1) blue OnePlus mobile device with IMEI 990017112075912 ("Subject Phone 1") The Subject Phones are located at the Bureau of ATF Providence Field Office as evidence number ATF Exhibit #06.
2. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment D.



i.

## ATTACHMENT B

### Property to Be Searched

1. One (1) red Apple iPhone with cracked case and screen in red case ("Subject Phone 2") The Subject Phones are located at the Bureau of ATF Providence Field Office as evidence number ATF Exhibit #04.
2. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment D.



i.

## Attachment C

## Property to Be Searched

3. One (1) grey Apple iPhone in clear case ("Subject Phone 3") The Subject Phones are located at the Bureau of ATF Providence Field Office as evidence number ATF Exhibit #05.
4. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment D.



ii.

## Attachment D

1. All records on the Device described in Attachment A through C that relate to violations of 18 U.S.C. § 922(g), felon in possession of a firearm and involve Joaquin FABIAN, including:

    a. communications regarding firearms purchases;

    b. communications between FABIAN and other individuals regarding the possible identity of those individuals to whom FABIAN may have distributed other firearm and narcotics;

    c. photographs of firearms and/or controlled substances;

    d. lists of customers and related identifying information;

    e. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    f. any information related to sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    g. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Suspect Phones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.